## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREG McMAHON<br>and ADAM GOLDBERG,<br><br>    Plaintiffs,<br><br> v.<br><br>GENERAC POWER SYSTEMS, INC.,<br><br>    Defendant. | Civil Action No. 2:21-cv-05660 |

## [PROPOSED] ORDER GRANTING MOTION TO DISMISS

**AND NOW**, this _____ day of _____, 2022, upon consideration of Defendant

Generac Power Systems, Inc.'s Motion to Dismiss and any responses or replies thereto, it is hereby

**ORDERED** that the Motion is **GRANTED**, and the Complaint is **DISMISSED.**


          _____
          The Honorable Gerald Pappert
          United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GREG McMAHON<br>and ADAM GOLDBERG,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAC POWER SYSTEMS, INC.,<br><br>Defendant. | Civil Action No. 2:21-cv-05660 |

## DEFENDANT GENERAC POWER SYSTEMS, INC.'S MOTION TO DISMISS

Defendant Generac Power Systems, Inc. moves under Rule of Civil Procedure 12(b)(6) to dismiss the Complaint of Plaintiffs Greg McMahon and Adam Goldberg. In support of its Motion, Defendant incorporates the accompanying Memorandum of Law.

Dated: September 30, 2022

/s Michael P. Daly
Michael P. Daly (Pa. Bar No. 86103)
Meaghan V. Geatens (Pa. Bar No. 329069)
Faegre Drinker Biddle & Reath LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
Phone: 215.988.2700
Fax: 215.988.2757
michael.daly@faegredrinker.com
meaghan.geatens@faegredrinker.com

*Counsel for Defendant*
*Generac Power Systems, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GREG McMAHON<br>and ADAM GOLDBERG,<br><br>                    Plaintiffs,<br><br>          v.<br><br>GENERAC POWER SYSTEMS, INC.,<br><br>                    Defendant. | Civil Action No. 2:21-cv-05660 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
<u>GENERAC POWER SYSTEMS, INC.'S MOTION TO DISMISS</u>**

Michael P. Daly (Pa. Bar No. 86103)
Meaghan V. Geatens (Pa. Bar No. 329069)
Faegre Drinker Biddle & Reath LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
Phone:  215.988.2700
Fax:  215.988.2757
michael.daly@faegredrinker.com
meaghan.geatens@faegredrinker.com

*Counsel for Defendant
Generac Power Systems, Inc.*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................2

    A.  Plaintiffs' Generators .................................................................................2

    B.  Plaintiffs' Warranties .................................................................................3

III.   LEGAL STANDARD .............................................................................................4

IV.    ARGUMENT ..........................................................................................................5

    A.  Plaintiffs Allege No Compensable Harm ..................................................6

    B.  Plaintiffs' Claims Are Barred ....................................................................6

       1. Mr. Goldberg's Warranty Expired Before It Was Allegedly Breached............7

       2. Neither Plaintiff Gave Notice Within A Reasonable Amount Of Time ..........7

       3. Neither Plaintiff Filed Suit Within The Limitations Period............................9

    C.  Plaintiffs' Claims Lack Merit ..................................................................10

       1. Plaintiffs' Express-Warranty Claims (Counts I And II) .............................10

       2. Plaintiffs' Implied-Warranty Claims (Counts I And III) ............................11

V.     CONCLUSION......................................................................................................14

# <u>TABLE OF AUTHORITIES</u>

**Cases** **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................4, 5

*Brill v. Sys. Res., Inc.*,
592 A.2d 1377 (Pa. Super. 1991).......................................................................13

*Bryant v. Winnebago Indus., Inc.*,
15 Va. Cir. 434, 1989 WL 1137653 (1989)........................................................12

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)...............................................................................5

*Cooper v. Simpson Strong-Tie Co., Inc.*,
460 F. Supp. 3d 894 (N.D. Cal. 2020) ...............................................................13

*Cooper-Booth Transp. Co. v. Daimler Trucks of N. Am., LLC*,
No. 17-3884, 2018 WL 1940527 (E.D. Pa. Apr. 24, 2018).................................9

*David v. Am. Suzuki Motor Corp.*,
629 F. Supp. 2d 1309 (S.D. Fla. 2009) ..............................................................11

*David's Bridal, Inc. v. Cels Enters., Inc.*,
No. 13-2870, 2015 WL 13651382 (E.D. Pa. Mar. 20, 2015) .............................6, 8

*DeFillippo v. Whirlpool Corp.*,
No. 18-12523, 2019 WL 4127162 (D.N.J. Aug. 30, 2019) ..................................7

*Demaria v. Nissan N. Am., Inc.*,
No. 15-3321, 2016 WL 374145 (N.D. Ill. Feb. 1, 2016) .....................................12

*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
66 F.3d 604 (3d Cir. 1995)...................................................................................7

*Goodwin v. Elkins & Co.*,
730 F.2d 99 (3d Cir. 1984) (Becker, J., concurring)............................................5

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
No. 11-4429, 2012 WL 1574301 (D.N.J. May 3, 2012) *aff'd*, 525 F. App'x 94
(3d Cir. 2013).......................................................................................................7

*Hebron v. Am. Isuzu Motors, Inc.*,
60 F.3d 1095 (4th Cir. 1995) ...............................................................................8

*Hornberger v. Gen. Motors Corp.*,
    929 F. Supp. 884 (E.D. Pa. 1996) ....................................................12

*Johansson v. Cent. Garden & Pet Co.*,
    804 F. Supp.2d 257 (D.N.J. 2011) ....................................................7

*Kerr v. Hunter Div.*,
    32 Va. Cir. 497, 1981 WL 394232 (1981) ..........................................8

*Miller v. Heil Co.*,
    525 F. Supp. 3d 612 (W.D. Pa. 2021) .............................................6, 12

*N. Am. Commc'ns, Inc. v. InfoPrint Sols. Co.*,
    817 F. Supp. 2d 623 (W.D. Pa. 2011) .............................................10

*Nat'l Container Corp. of Pa. v. Regal Corrugated Box Co.*,
    119 A.2d 270 (Pa. 1956) .................................................................8

*Nationwide Ins. Co. v. Gen. Motors Corp./Chevrolet Motor Div.*,
    625 A.2d 1172 (Pa. 1993) .............................................................9, 10

*Pension Benefit Guar. Corp. v. White Consolid. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993) ..........................................................5

*Poppenheimer v. Bluff City Motor Homes, Div. of Bluff City Buick Co.*,
    658 S.W.2d 106 (Tenn. Ct. App. 1983) ..............................................9

*Providence Vill. Townhouse Condo. Ass'n v. Amurcon-Loudoun Corp.*,
    33 Va. Cir. 165, 1994 WL 1031006 (1994) ........................................9

*Smith-Moore Body Co. v. Heil Co.*,
    603 F. Supp. 354 (E.D. Va. 1985) .....................................................8

*Steinhardt Grp. v. Citicorp*,
    126 F.3d 144 (3d Cir. 1997) ............................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .......................................................................5

*Vullings v. Bryant Heating & Cooling Sys.*,
    No. 18-3317, 2019 WL 687881 (E.D. Pa. Feb. 19, 2019) ......................7

*Wharton, Aldhizer & Weaver v. Savin Corp.*,
    350 S.E.2d 635 (Va. 1986) ..............................................................6

**Statutes, Rules & Regulations**

13 Pa.C.S. § 2316(b) ...........................................................................11

13 Pa.C.S. § 2607(c)(1) ..................................................................................8

13 Pa.C.S. § 2719(a)(1) ................................................................................12

13 Pa.C.S. § 2725(a)-(b) ................................................................................9

15 U.S.C. § 2310(d)(1) ...................................................................................6

Fed. R. Civ. P. 8(a)(2) ....................................................................................5

Fed. R. Civ. P. 12(b)(6) .............................................................................4, 5

Fed. R. Civ. P. 12(d) ......................................................................................5

Va. Code Ann. § 8.2-316 ..............................................................................11

Va. Code Ann. § 8.2-607(3)(a) .......................................................................8

Va. Code Ann. § 8.2-719(1) ..........................................................................12

Va. Code Ann. § 8.2-725(1)-(2) ......................................................................9

**Other Authorities**

FTC, *Businessperson's Guide to Federal Warranty Law* (updated Mar. 2018)...........................11

Jane M. Draper, Annotation, Sufficiency & Timeliness of Buyer's Notice Under
    U.C.C. § 2-607(3)(a) of Seller's Breach of Warranty,
    89 A.L.R.5th 319 (2001)..........................................................................8

## I.      <u>INTRODUCTION</u>

This case concerns an Important Safety Notice that Generac sent to Plaintiffs and others to remind them about regularly and properly maintaining their home standby ("HSB") generators. The notice explained that improper installation, inadequate maintenance, insufficient clearance, and harsh environmental conditions could combine to cause corrosion in a generator's plenum, which was a component in some older models that delivered fuel to the engine.  Generac also offered to have a technician conduct an optional inspection that would cost $80—an amount that was heavily discounted for everyone and entirely refunded to anyone who needed plenum repairs.

Plaintiffs received that notice and eventually filed suit.  The gist of their claims is that the inspections should have been free even for owners whose plenums were in perfect working order, and that conditioning refunds on the existence of corrosion amounted to a breach of an express or implied warranty.  Generac now moves to dismiss because those claims fail as a matter of law.

First, neither Plaintiff alleged any harm.  As for their generators, neither alleged anything about corrosion or performance issues.  And as for the fee, Mr. Goldberg alleges he never paid it. Although Mr. McMahon alleges he did, he ignores that the inspection was optional and the fee was less than he would have paid to an independent technician for an inspection as part of routine maintenance.  In other words, he saved money rather than lost money.  *See infra* Section IV.A.

Second, even if Plaintiffs had been harmed in some way, their claims would be time-barred. That is so because Mr. Goldberg's warranty had expired before it was allegedly breached, because neither Plaintiff gave notice of an alleged breach within a reasonable time, and because neither filed suit within the applicable limitations period.  *See infra* Section IV.B.

Finally, even if Plaintiffs' claims weren't time-barred, they would fail for several reasons, not least of which is that they allege no facts suggesting that their generators—which have been in service without issue for nearly a decade—are defective in any way.  *See infra* Section IV.C.

## II.     <u>BACKGROUND</u>

### A.     <u>Plaintiffs' Generators</u>

Mr. McMahon alleges that he bought a home in Pennsylvania with a Generac generator that had been installed in 2014, and that he extended its warranty's expiration from 2019 to 2024. *See* Compl. ¶¶ 10-11.

Mr. Goldberg alleges that he bought a Generac generator in 2013 for his home in Virginia. *See id.* ¶¶ 15-17.  He does not allege that he extended its warranty's expiration.  *See id.*

Plaintiffs allege that Mr. McMahon received an Important Safety Notice from Generac in December 2020 and Mr. Goldberg received one in March 2021.  *See id.* ¶¶ 12-13, 18-19 & Ex. A. Although Generac accepts those allegations as true for present purposes, it notes that the notice attached to the Complaint references an earlier notice to Mr. Goldberg.  *Id.*, Ex. A.  Plaintiffs allege nothing about other notices, let alone when they might have received them.

The Important Safety Notice explained that improper installation, inadequate maintenance, insufficient clearance, and harsh environmental conditions could combine to cause corrosion in a generator's plenum.  *Id.*, Ex. A.  It also recommended that homeowners who had not had a recent inspection schedule one with an authorized dealer.  *See id.*  To encourage homeowners to do so, Generac would discount the cost of the inspection for every homeowner and would waive the cost of the inspection (and repairs) for any homeowner with significant plenum corrosion.  *See id.* at 2 (discussing inspection fee).

Plaintiffs allege that Mr. McMahon paid the $80 inspection fee but Mr. Goldberg did not. *See id.* ¶¶ 14, 20.   Neither Plaintiff alleges that his plenum has any corrosion, let alone any corrosion that caused any property damage.  *See generally id*.

Plaintiffs allege that they sent a pre-suit notice to Generac on December 16, 2021.  *See id.* ¶ 61.  They filed suit on December 30, 2021.  *See generally id.*

**B.**     <u>**Plaintiffs' Warranties**</u>

Plaintiffs allege that Generac warranted that their generators would "be free from defects in material and workmanship" for the earlier of 5 years after activation or 2,000 hours of operation. *See id.* ¶ 31.  Although they quote the warranty and refer to it as Exhibit B, *see id.* ¶ 31 & n.15, they did not attach an Exhibit B to their Complaint.

Consumers can find copies of Generac's warranties by searching by serial number on its website.  *See* https://www.generac.com/service-support/product-support-lookup.  Several aspects of the Five-Year Limited Warranty associated with Plaintiffs' generators are relevant here.  First, the warranty states that generators "will be free from defects in material and workmanship for the items and period set forth below."  *See* Ex. A, Generac Power Systems Warranty, at 1.  It then sets three tiers of coverage:

**WARRANTY SCHEDULE**

YEARS ONE and TWO – Limited comprehensive coverage on mileage, labor, and parts.

YEAR THREE – Limited comprehensive coverage on parts.

YEARS FOUR and FIVE – Limited comprehensive coverage on engine (short block) and alternator (rotor and stator) parts only.

*Id.* (typography in original).

Second, the warranty clearly and conspicuously excludes certain items:

**THIS WARRANTY SHALL NOT APPLY TO THE FOLLOWING:**

. . .

3.     Costs of normal maintenance (i.e. tune-ups, associated part(s), adjustments, loose/leaking clamps, installation and start-up).

. . .

3

> 5.      Damage to the generator system (including transfer switch) caused by improper installation, maintenance or costs necessary to correct installation.
>
> . . .
>
> 9.      Steel enclosures that are rusting due to the improper installation, location in a harsh or saltwater environment . . . .
>
> 10.      Failures due, but not limited, to normal wear and tear, accident, misuse, abuse, negligence or improper installation.  As with all mechanical devices, the Generac engines need periodic part(s) service and fluid replacement to perform as designed. This warranty will not cover repair when normal use has exhausted the life of a part(s) or engine.

*Id.* (typography and emphasis in original).

Third, the warranty disclaims any other warranties—whether express or implied—that are not explicit in the warranty itself:

> THIS WARRANTY IS IN PLACE OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED. SPECIFICALLY, GENERAC MAKES NO OTHER WARRANTIES AS TO THE MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.  Any implied warranties which are allowed by law, shall be limited in duration to the terms of the express warranty provided herein.

*Id.* at 2 (typography in original).

Finally, the warranty states that the exclusive remedy is that Generac will, "at its option," either "repair or replace" parts that are "found to be defective."  *Id.*

## III.   LEGAL STANDARD

Rule 12(b)(6) requires courts to dismiss claims that "fail[] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In reviewing a motion under Rule 12(b)(6), courts must accept well-pleaded allegations as true and view them in the light most favorable to the plaintiff. But it is not enough to simply recite the elements of a claim.  *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, complaints must

"show[] that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), which means they must "nudge" the claims "across the line" from possible to plausible. *Twombly*, 550 U.S. at 555, 570.

In deciding a motion to dismiss under Rule 12(b)(6), a court may look beyond the pleading without converting the motion into a summary judgment motion under Rule 12(d).  Specifically, courts can consider government documents, matters of public record, documents attached to the complaint, and documents whose authenticity is not challenged and on which a claim is based. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007); *Steinhardt Grp. v. Citicorp*, 126 F.3d 144, 145 (3d Cir. 1997); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consolid. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit*, 998 F.2d at 1196.  Such documents help "dispose of claims which, in light of the documents on which they are based, are legally insufficient, without the necessity of allowing the extensive discovery generally required before passing on a motion for summary judgment." *Goodwin v. Elkins & Co.*, 730 F.2d 99, 114 (3d Cir. 1984) (Becker, J., concurring).

## IV.   ARGUMENT

The gist of Plaintiffs' claims is that plenum inspections should have been "at no cost" even for owners whose plenums were in perfect working order.  *See, e.g.*, Compl. ¶ 4.  From that core allegation, Plaintiffs assert three breach-of-warranty claims:  breach of express warranty, breach of implied warranty, and violation of the federal Magnuson-Moss Warranty Act ("MMWA"), which creates a private right of action for breaches of express or implied warranties. *Id.* ¶¶ 45-74. Generac now moves to dismiss because those claims fail as a matter of law.

A.      **Plaintiffs Allege No Compensable Harm**

As an initial matter, Plaintiffs' claims should be dismissed because neither of them has alleged any cognizable harm.  Such harm is, not surprisingly, an essential element of each claim. *See, e.g.*, *Miller v. Heil Co*., 525 F. Supp. 3d 612, 617 (W.D. Pa. 2021) ("A successful claim for breach of express warranty must plead . . . damages."); *David's Bridal, Inc. v. Cels Enters., Inc.*, No. 13-2870, 2015 WL 13651382, at *18 (E.D. Pa. Mar. 20, 2015) (rejecting claim of plaintiff that could not prove harm); *Wharton, Aldhizer & Weaver v. Savin Corp*., 350 S.E.2d 635, 637 (Va. 1986) (affirming entry of judgment against plaintiff offered no evidence regarding its damages); 15 U.S.C. § 2310(d)(1) ("[A] consumer *who is damaged by* the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages . . . .") (emphasis added).

Here, however, neither Plaintiff alleged cognizable harm.  Indeed, neither alleged anything about the condition of their generators, which presumably they would have done if their plenums were even the slightest bit corroded.  *See* Compl. ¶¶ 9-20.  Instead, they target Generac's policy of charging a refundable $80 inspection fee.  But Mr. Goldberg affirmatively alleges that he did not pay that fee.  *See id* ¶ 20.  And while Mr. McMahon does allege that he paid that fee, he ignores not only that he was under no obligation to do so, but also that an inspection outside of Generac's discounted program would have cost much more than $80.  In other words, his theory of harm is backwards; rather than losing $80, he saved the difference between the $80 he paid and what he would have paid—which he does not allege—to an independent technician.  It follows that neither Plaintiff has any cognizable harm or by extension any viable claim.

B.      **Plaintiffs' Claims Are Barred**

Even if Plaintiffs had been harmed, their claims would be barred for several other reasons, specifically because Mr. Goldberg's warranty had expired before it was allegedly breached,

6

because neither Plaintiff gave notice of an alleged breach of warranty within a reasonable time, and because neither Plaintiff filed suit within the applicable limitations period.

### 1.   Mr. Goldberg's Warranty Expired Before It Was Allegedly Breached

Mr. Goldberg alleges that he bought his HSB generator in July 2013. *Id.* ¶¶ 15-17. That means that his warranty expired in 2018—i.e., nearly three years before the March 2021 notice from which his claims arise. In other words, he no longer had a warranty to breach. It follows that his claims are barred.

As for his state-law claims, they fail as a matter of law because the alleged breach occurred outside of the warranty period. *See, e.g.*, *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995) ("[T]he general rule, from which we see no reason to deviate, is that an express warranty does not cover repairs made after the applicable time has elapsed." (cleaned up) (internal quotation marks omitted)); *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, No. 11-4429, 2012 WL 1574301, at *19 (D.N.J. May 3, 2012) ("As a general rule, general warranties . . . do not cover repairs made after the applicable time has elapsed." (internal quotation marks omitted)) *aff'd*, 525 F. App'x 94 (3d Cir. 2013). And as for his MMWA claim, that rises and falls with his state-law claims. *See, e.g.*, *DeFillippo v. Whirlpool Corp.*, No. 18-12523, 2019 WL 4127162, at *14 (D.N.J. Aug. 30, 2019) (citing *Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp.2d 257, 265 (D.N.J. 2011) ("Claims under the MMWA depend upon the disposition of the underlying state law warranty claims."); *Vullings v. Bryant Heating & Cooling Sys.*, No. 18-3317, 2019 WL 687881, at *2 (E.D. Pa. Feb. 19, 2019) (dismissing MMWA claim because state-law claims were time-barred)). Accordingly, all of Mr. Goldberg's claims are barred by his expired warranty.

### 2.   Neither Plaintiff Gave Notice Within a Reasonable Amount of Time

The relevant versions of the U.C.C. both provide that buyers are "barred from any remedy" under a warranty if they do not "notify the seller" of an alleged breach of warranty "within a

reasonable time after he discovers or should have discovered" the breach. *See* 13 Pa.C.S. § 2607(c)(1); Va. Code Ann. § 8.2-607(3)(a). That requirement serves several important purposes, namely "enabling the seller to cure the breach," "promoting the voluntary resolution of disputes," and "minimizing prejudice to the seller from the passage of time." *Hebron v. Am. Isuzu Motors, Inc.*, 60 F.3d 1095, 1098-99 & n.2 (4th Cir. 1995). Courts across the country have held that buyers bear the burden of proving that notice was reasonable. *See, e.g.*, Jane M. Draper, Annotation, Sufficiency & Timeliness of Buyer's Notice Under U.C.C. § 2-607(3)(a) of Seller's Breach of Warranty, 89 A.L.R.5th 319 (2001).

Although the U.C.C. does not define or explain how much delay is "reasonable," courts in Pennsylvania and Virginia (and elsewhere) have dismissed breach-of-warranty claims brought by plaintiffs who gave notice more quickly than Mr. McMahon and Mr. Goldberg. S*ee, e.g.*, *David's Bridal*, 2015 WL 13651382, at *16 (collecting cases in which notice was deemed untimely, including notices given 34 days, 68 days, and three-and-a-half months after alleged breach); *Smith-Moore Body Co. v. Heil Co.*, 603 F. Supp. 354, 358-59 (E.D. Va. 1985) (holding that notice seven months after breach was not reasonable); *see also Kerr v. Hunter Div.*, 32 Va. Cir. 497, 1981 WL 394232, at *9 (1981) (holding that notice nine months after breach was not reasonable); *Nat'l Container Corp. of Pa. v. Regal Corrugated Box Co.*, 119 A.2d 270, 273 (Pa. 1956) (holding that notice four months after breach would not be reasonable). Here, Plaintiffs provided notice on December 16, 2021. Compl. ¶ 61. Even if we ignore the earlier notice that is referenced in the first sentence of Exhibit A to the Complaint, *see supra* Section II.A, Plaintiffs waited twelve months (as to Mr. McMahon, who alleges he received an Important Safety Notice in December 2020) and nine months (as to Mr. Goldberg, who alleges he received an Important Safety Notice in March 2021) to notify Generac that they believed their warranty had been breached. *See* Compl.

8

¶¶ 12, 18.  They offer no reason why they decided to wait that long.  It follows that their delay was unreasonable and their claims are untenable.

### 3.     Neither Plaintiff Filed Suit Within the Limitations Period

Plaintiffs' implied-warranty claims are also barred by the applicable statutes of limitations. Under both Virginia's and Pennsylvania's versions of the U.C.C., implied-warranty claims must be commenced within four years of the product's delivery.  *See* Va. Code Ann. § 8.2-725(1)-(2); 13 Pa.C.S. § 2725(a)-(b).  Here, that period expired in 2017 for Mr. Goldberg (whose generator was delivered in 2013) and 2018 for Mr. McMahon (whose generator was delivered in 2014). Although there is an exception to the limitations period for warranties that "explicitly extend[] to future performance," that applies only to express warranties.   It does not apply to implied warranties, which by their nature are not "explicit" about anything.  *See Cooper-Booth Transp. Co. v. Daimler Trucks of N. Am., LLC*, No. 17-3884, 2018 WL 1940527, at *3 (E.D. Pa. Apr. 24, 2018) ("[I]mplied warranties . . . do not explicitly extend to future performance"); *Providence Vill. Townhouse Condo. Ass'n v. Amurcon-Loudoun Corp.*, 33 Va. Cir. 165, 1994 WL 1031006, at *4 (1994) ("The future performance exception would be inapplicable to implied warranties."); *Nationwide Ins. Co. v. Gen. Motors Corp./Chevrolet Motor Div.*, 625 A.2d 1172, 1178 (Pa. 1993) ("[T]he great weight of authority takes the position that an implied warranty, by nature, cannot 'explicitly' extend to future performance.").  It follows that the implied-warranty claims (and any MMWA claims stemming from them) are time-barred.

Except insofar as Mr. McMahon is concerned, the same is true of express-warranty claims. The future-performance exception applies if a warranty "explicitly extends to future performance." The warranty in this case extends to defects in "material" or "workmanship"—terms that concern a product's condition at the time of delivery.  *See, e.g.*, *Poppenheimer v. Bluff City Motor Homes, Div. of Bluff City Buick Co.*, 658 S.W.2d 106, 111 (Tenn. Ct. App. 1983) ("[T]he warranty is clear

9

that it covers only defects in workmanship and materials . . . .   Thus, this was a warranty that would
be breached on tender of delivery, although a remedy is allowed for a limited time after delivery.").
That is best viewed as a "repair and replace" warranty that promises not future performance of the
product but rather future remedies from the seller.  *See N. Am. Commc'ns, Inc. v. InfoPrint Sols.
Co.*, 817 F. Supp. 2d 623, 632 (W.D. Pa. 2011) ("[W]arranties to repair or replace a good are
distinct from warranties for future performance, and do *not* extend the statute of limitations.")
(emphasis in original) (applying New York law).  Although Pennsylvania (where Mr. McMahon
resides) has adopted a minority approach, many other states have held that similar repair and
replace warranties do not trigger the future-performance exception to the limitations period.  *See
Nationwide Ins. Co.*, 625 A.2d at 1176 & n.7 (noting but rejecting majority approach).  For that
reason, Mr. Goldberg's express warranty claim is also time-barred.

**C.** **Plaintiffs' Claims Lack Merit**

Even if Plaintiffs' claims were not time-barred, they would still fail because Generac
complied with its express warranty and disclaimed any implied warranty.

**1.** **Plaintiffs' Express-Warranty Claims (Counts I and II)**

Plaintiffs claim that Generac breached its express warranty by charging an inspection fee.
But that would only be true if their warranty stated that inspections would be free.  And their
warranty said nothing of the sort.  To the contrary, it stated that Generac would either "repair or
replace" parts that are "found to be defective" during the term of the five-year warranty.  *See supra*
Section II.B.  Although it does reference "examination, inspection, or testing," such language
refers to a seller's ability to confirm a consumer's claim that a product is defective.  It cannot be
read as promising that inspections will be free even for consumers whose goods are *not* defective.
Even if we assume for the sake of argument that there was some unspecified defect in Plaintiffs'
plenums, that would not amount to a breach of their warranties so long as Generac were to repair

or replace them—which is exactly what its Important Safety Notice said it would do.  *See, e.g.*, *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1319 (S.D. Fla. 2009).

The Complaint identifies nothing in the MMWA or any other federal or state law that prohibits charging a fee to inspect warranted goods.  Indeed, the FTC—the agency tasked with interpreting and enforcing the MMWA—offers an example of a limited warranty that has customers pay for postage and labor.  FTC, *Businessperson's Guide to Federal Warranty Law* (updated Mar. 2018), *at* https://www.ftc.gov/business-guidance/resources/businesspersons-guide-federal-warranty-law.  It follows that there is no rule against charging to inspect warranted goods.  In any event, Generac certainly did not breach anything in its express warranty by doing so.

### 2.  Plaintiffs' Implied-Warranty Claims (Counts I and III)

Next, Plaintiffs claim that Generac breached various implied warranties because their generators were "not of merchantable quality," their generators were "unfit for ordinary use," or their warranties "fail[ed] of their essential purpose."  Compl. ¶¶ 54-55, 69-71.  Those theories of liability fail for at least three reasons.

First, Plaintiffs' implied-warranty claims fail because their express warranties disclaimed implied warranties.  As noted above, the Five-Year Limited Warranty stated as follows:

> THIS WARRANTY IS IN PLACE OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED.  SPECIFICALLY, GENERAC MAKES NO OTHER WARRANTIES AS TO THE MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

*See supra* Section II.B.  Pennsylvania and Virginia law allow sellers to disclaim implied warranties so long as the disclaimers are conspicuous.  *See* 13 Pa.C.S. § 2316(b); Va. Code Ann. § 8.2-316. It follows that Generac did not even make the implied warranties Plaintiffs say were breached.

No doubt recognizing this, Plaintiffs claim that the express warranty (and by extension its disclaimer of implied warranties) is void because it "fail[s] of [its] essential purpose."  Compl.

¶ 71.  Their point, it seems, is that the warranty did not provide sufficient remedies.  But that is wrong as a matter of law, as the U.C.C. allows sellers to "limit[] the remedies of the buyer to . . . repair and replacement of nonconforming goods," which is precisely what Generac did here.  *See* 13 Pa.C.S. § 2719(a)(1); Va. Code Ann. § 8.2-719(1); *see also, e.g.*, *Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, 890-91 (E.D. Pa. 1996) (holding that exclusive remedy of repair, and disclaimer of incidental and consequential damages, did not fail of its essential purpose); *Bryant v. Winnebago Indus., Inc.*, 15 Va. Cir. 434, 1989 WL 1137653, at *2 (1989) (holding that repair-and-replace warranty that excluded consequential damages "did not fail of its essential purpose").

Second, even if we ignore that disclaimer, these claims are premised on the existence of a "defect" that does not exist.  *See, e.g.*, *Miller*, 525 F. Supp. 3d at 619 ("A successful breach of implied warranty of merchantability must show that the product was defective . . . .").  Plaintiffs describe the defect as a "propensity to develop corrosion."  Compl. ¶ 3.  But that cannot be squared with the fact that Plaintiffs—whose generators have been in service since 2013 and 2014—allege nothing about corrosion or any other problems with their generators.  *See id.* ¶¶ 9-20.  If a mere "propensity to develop corrosion" were in and of itself a defect, then virtually every product with metal components would be defective.  *See, e.g.*, *Demaria v. Nissan N. Am., Inc.*, No. 15-3321, 2016 WL 374145, at *11 (N.D. Ill. Feb. 1, 2016) (dismissing frauds claim arising from alleged defect and explaining that "the allegedly concealed fact cannot be simply that metal rusts over time in general").  Plaintiffs' generators, which show no alleged signs of corrosion after nearly a decade of exposure to the elements, are not "defective" in any serious sense of the word.

Finally, even if Plaintiffs had alleged facts suggesting that their generators had corroded, they have not alleged facts regarding other elements of their implied-warranty claims, for example that they used the product as intended, or that there were no other causes for the corrosion.  *See,*

*e.g.*, *Brill v. Sys. Res., Inc.*, 592 A.2d 1377, 1379 (Pa. Super. 1991).  Indeed, they allege nothing about the condition of their generators.  Nor do they allege facts that would either explain the cause of the supposed "propensity" to develop corrosion or rule out other possible causes of corrosion such as improper installation or maintenance.  *See* Compl. ¶¶ 9-20.

The dismissal of similar claims in *Cooper v. Simpson Strong-Tie Co., Inc.*, 460 F. Supp. 3d 894 (N.D. Cal. 2020) is instructive.  The plaintiffs in *Cooper* brought breach-of-warranty claims against a manufacturer of construction fasteners that had sent them a notice about the possibility of corrosion caused by improper installation.  *Id.* at 909.  Unlike Mr. McMahon and Mr. Goldberg, the plaintiffs alleged that the product had corroded.  In nevertheless dismissing their claims, the court found that they had not plausibly alleged the existence of a defect or breach of warranty, as they had alleged no facts suggesting that the manufacturer had warranted that the fasteners would never corrode, no facts regarding whether the fasteners had been installed and maintained pursuant to the manufacturer's instructions, and no facts regarding when they were installed, when they began corroding, or why they had corroded.  *Id.* at 902-06; *see also id.* at 907 ("And if they do not know when the Product was installed in their homes or whether it was installed properly, that raises a pretty strong inference that they're speculating about the reasons for and rate of corrosion . . . .").

Plaintiffs' claims fare no better.  Neither alleges any facts suggesting that his generator was installed as directed by Generac's Installation Guidelines or regularly and properly maintained as directed by its Owner's Manual.  Indeed, neither document is even mentioned in the Complaint. *See generally* Compl.  And like the letter in *Cooper*, the Important Safety Notice in this case is hardly evidence of a defect, as it attributes corrosion to a combination of improper installation, inadequate maintenance, insufficient clearance, and harsh environmental conditions.  *See Cooper*, 460 F. Supp. 3d at 909 ("If anything, the letter suggests an alternative reason for the corrosion of

products installed in Plaintiffs' homes:  mis-installation.").  In any event, neither has alleged anything about any corrosion or indeed any other problems with their generators.  Compl. ¶¶ 9-20. It follows that Plaintiffs have not stated a claim for breach of any implied warranties.

## V.    **CONCLUSION**

For the foregoing reasons, Generac respectfully requests that its Motion be granted and Plaintiffs' claims be dismissed.

Respectfully submitted,

Dated:  September 30, 2022

*/s Michael P. Daly*
Michael P. Daly (Pa. Bar No. 86103)
Meaghan V. Geatens (Pa. Bar No. 329069)
Faegre Drinker Biddle & Reath LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
Phone:  215.988.2700
Fax:  215.988.2757
michael.daly@faegredrinker.com
meaghan.geatens@faegredrinker.com

*Counsel for Defendant*
*Generac Power Systems, Inc.*

14

## **CERTIFICATE OF SERVICE**

I certify that, on the date set forth below, I served the foregoing document on all counsel of record who have entered an appearance via the Court's CM/ECF system.

Dated: September 30, 2022                    By:   */s/  Michael P. Daly*_____
                                                          Michael P. Daly