**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GREG MCMAHON and ADAM GOLDBERG, | |
| Plaintiffs, | |
| v. | Civil Action No. 2:21-cv-05660 |
| GENERAC POWER SYSTEMS, INC., | |
| Defendant. | |

**<u>PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................. 2

    A.    Plaintiffs' Allegations and Pre-Litigation Investigation .................................... 2

    B.    History of the Litigation.................................................................................... 3

    C.    The Parties' Settlement Negotiations................................................................ 3

    D.    The Settlement Class ........................................................................................ 4

    E.    Relief Benefiting the Settlement Class ............................................................. 4

    F.    Attorneys' Fees, Costs, and Service Awards .................................................... 5

    G.    Notice to Settlement Class Members ................................................................ 6

    H.    The Release ...................................................................................................... 7

III.    ARGUMENT ......................................................................................................... 8

    A.    The Settlement Warrants Preliminary Approval................................................ 8

    B.    The *Girsh* Factors Support Preliminary Approval........................................... 10

    C.    Certification of the Proposed Settlement Class is Appropriate ....................... 12

        1.    Numerosity.......................................................................................... 12

        2.    Commonality........................................................................................ 13

        3.    Typicality............................................................................................ 14

        4.    Adequacy............................................................................................. 14

        5.    Predominance and Superiority.............................................................. 15

    D.    The Notice Plan Satisfies Due Process and Rule 23(e) ................................... 17

    E.    A Final Approval Hearing Should Be Scheduled ............................................ 18

IV.    CONCLUSION .................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages**

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994).................................................................................................13, 14

*In re Ins. Brokerage Antitrust Litig.*,
    297 F.R.D. 136, 144 (D.N.J. 2013).................................................................................8

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
    No. 3:08-md-01998, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009).......................................17

*Ebner v. Merchants & Med. Credit Corp.*,
    No. 14-06882, 2017 WL 1079966 (E.D. Pa. Mar. 22, 2017) ............................................14, 16

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010).................................................................................................8

*Fidel v. Farley*,
    534 F.3d 508 (6th Cir. 2008) .................................................................................................17

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975).................................................................................................10

*In re GMC Truck Fuel Tank Prods. Litig.*,
    55 F.3d 768, 806 (3d Cir. 1995).................................................................................10, 14

*Good v. Nationwide Credit, Inc.*,
    314 F.R.D. 141 (E.D. Pa. 2016).................................................................................16

*Henderson v. Volvo Cars of N. Am., LLC*,
    No. 09-4146 CCC, 2013 WL 1192479 (D.N.J. Mar. 22, 2013) ............................................17

*Huffman v. Prudential Ins. Co. of Am.*,
    2:10-cv- 05135, 2019 WL 1499475 (E.D. Pa. Apr. 5, 2019)..................................................10

*Hunter v. M-B Cos., Inc.*,
    No. 19-CV-04838, 2020 WL 4059898 (E.D. Pa. July 20, 2020)..............................................8

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
    No. 17-341, 2022 WL 16533571 (E.D. Pa. Oct. 28, 202) .....................................................16

*McDermid v. Inovio Pharms., Inc.*,
    No. 20-01402, 2023 WL 227355 (E.D. Pa. Jan. 18, 2023).........................................12, 14, 15

*Mehling v. New York Life Ins.*,
  246 F.R.D. 467 (E.D. Pa. 2007) ............................................................................. 8

*In re Nat'l Football League Players' Concussion Injury Litig.*,
  301 F.R.D. 191 (E.D. Pa. 2014) ......................................................................... 8, 18

*In re Prudential Ins. Co. Sales Litig.*,
  148 F.3d 282 (3d Cir. 1998) ................................................................................. 13

*Rodriguez v. Nat'l City Bank*,
  726 F.3d 372 (3d Cir. 2013) ................................................................................. 13

*Rose v. Travelers Home & Marine Ins. Co.*,
  No. 19-977, 2020 WL 4059613 (E.D. Pa. July 20, 2020) ................................. 12, 15

*Rudel Corp v. Heartland Payment Sys., Inc.*,
  No. 16-cv-2229, 2017 WL 4422416 (D.N.J. Oct. 4, 2017) ...................................... 8

*In re: Shop-Vac Mktg. & Sales Practices Litig.*,
  No. 4:12-MD-2380, 2016 WL 3015219 (M.D. Pa. May 26, 2016) .......................... 10

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001) ................................................................................. 12

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273, 323 (3d Cir. 2011) ........................................................... 10, 13, 15, 16

*Teh Shou Kao v. CardConnect Corp*,
  No. 16-cv-5707, 2021 WL 698173 (E.D. Pa. Feb. 23, 2021) ................................. 14

*Udeen v. Subaru of Am., Inc.*,
  No. 18 17334(RBK/JS), 2019 WL 4894568 (D.N.J. Oct. 4, 2019) ..................... 8, 10

*In re ViroPharma Inc. Sec. Litig.*,
  No. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ........................................ 9

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................................. 12

*In re Warfarin Sodium Antitrust Litig*,
  391 F.3d 516 (3d Cir. 2004) ...................................................................... 13, 14, 16

*Wood v. AmeriHealth Caritas Servs., LLC*,
  No. 17-3697, 2020 WL 1694549 (E.D. Pa. Apr. 7, 2020) ................................. 13, 16

**Statutes**                                                                                        **Pages**

Fed. R. Civ. P. 23 ............................................................................................ *passim*

**Secondary Sources**                                                                              **Pages**

Fed. Jud. Ctr., Manual for Complex Litig. Fourth (2004) ...................................... 17, 18

## I.      INTRODUCTION

Plaintiffs Greg McMahon and Adam Goldberg brought this action on behalf of themselves and a putative class of persons in the United States who own Generac home standby generators and received an Inspection Notice Letter from Generac. The Inspection Notice Letter provided details on an inspection program that related to potential "significant corrosion of the fuel plenum" in certain conditions. ECF No. 1-1, at 1. The inspection program encouraged customers to arrange for inspections through Generac's Authorized Service Dealers at a cost of $80. If the inspection determined that the fuel plenum was significantly compromised, Generac agreed to reimburse the $80 inspection cost and replace the necessary parts free of charge.  If the inspection did not reveal significant corrosion, Generac would not reimburse the inspection fee. Plaintiffs brought this lawsuit and alleged that Generac should have performed the inspections for free, and reimburse all of the $80 inspection fees paid by consumers that had not been reimbursed by Generac.

The proposed Settlement Agreement ("Settlement" or "SA") achieves that goal. Generac has agreed to refund any claimants their $80 inspection fees if they have not previously been refunded. In addition, Generac has agreed to conduct free inspections of any Class Generators that have not yet been inspected.[1] Because the Settlement achieves the goal of this litigation, while avoiding the risks and costs of protracted litigation, Plaintiffs respectfully request that the Court grant their unopposed Motion for Preliminary Approval of the Class Action settlement so that notice can be disseminated to the Settlement Class.

---

[1]  The capitalized terms used herein are defined in Section A of the Settlement Agreement, which is attached as Exhibit A to the Declaration of Joseph G. Sauder.

## II.      FACTUAL BACKGROUND

### A.  Plaintiffs' Allegations and Pre-Litigation Investigation

Before filing this Action, Plaintiffs' counsel conducted an extensive investigation into the alleged corrosion of the plenum in the Class Generators. This investigation included interviewing members of the putative class and reviewing their documents, researching consumer reporting on various websites, reviewing Generac's manuals and other materials, researching potential causes of action, speaking with employees of Generac's authorized service dealerships, communicating with consulting experts in the field of generator systems, and drafting a detailed Complaint. Declaration of Joseph G. Sauder, ¶ 9 ("Sauder Dec.").

The named Plaintiffs are residents of Pennsylvania and Virginia. Complaint, ECF No. 1, at ¶¶ 9, 15. Plaintiff McMahon purchased an extended warranty from Generac, which provided him with warranty coverage until 2024. ¶ 11. In December of 2020, Plaintiff McMahon received a letter from Generac that recommended he pay $80 for an inspection to detect the presence of corrosion along the fuel line, but also stated that he would only be reimbursed if the fuel plenum was found to be "significantly compromised." ¶ 13. Plaintiff McMahon paid the $80 inspection fee, but Generac did not reimburse him. ¶ 14. In March of 2021, Plaintiff Goldberg received a similar letter from Generac recommending that he pay $80 for an inspection, which also stated that he would only be reimbursed if the fuel plenum was found to be "significantly compromised." ¶ 19. Plaintiff Goldberg did not pay for the inspection, as he believed Generac should perform it at no cost to him, regardless of its findings. ¶ 20. Plaintiffs' Complaint seeks certification of a Nationwide Class as well as subclasses in Pennsylvania and Virginia. ¶¶ 36-37.  The Complaint alleges claims for violations of the Magnuson-Moss Warranty Act (¶¶ 45-61), as well as for breaches of express warranty (¶¶ 62-66) and implied warranty (¶¶ 67-74).

### B. History of the Litigation

Plaintiffs filed the initial Complaint in this Action on December 30, 2021. ECF No. 1. Judge Tucker granted two extensions to Generac's deadline to respond to Plaintiffs' Complaint. ECF Nos. 7, 11. On May 31, 2022, the Action was reassigned to Judge Pratter. ECF No. 13. On June 2, 2022, the Action was reassigned to Your Honor. ECF No. 14. On June 6, 2022, the Court entered an additional extension for Generac to respond to Plaintiffs' Complaint, and on September 30, 2022, Generac filed a motion to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6). ECF Nos. 15, 16.

Plaintiffs investigated and drafted a response to Generac's motion to dismiss. Sauder Dec., ¶ 10. Due to the advanced stage of settlement negotiations between the parties, the parties sought three extensions of time to extend Plaintiffs' opposition deadline, which the Court granted. ECF Nos. 18-20. The briefing on Generac's motion to dismiss allowed the parties to assess the strengths and weaknesses of further litigation and assisted the parties throughout settlement negotiations.

### C. The Parties' Settlement Negotiations

On May 16, 2022, the Parties engaged in an in-person mediation session with Judge Diane M. Welsh (Ret.) at JAMS' Philadelphia office. Sauder Dec., ¶ 11. The Parties made significant progress during that mediation, and continued negotiations over the following eight months with further assistance from Judge Welsh. In connection with the settlement negotiations, the Parties exchanged confirmatory discovery subject to Rule 408 of the Federal Rules of Evidence. Sauder Dec., ¶ 12. After confirmatory discovery and the Parties' protracted negotiations, the Parties executed the Settlement Agreement on February 3, 2023. Sauder Dec., ¶ 13.

The terms of the Settlement Agreement are the result of arm's-length negotiations between experienced counsel for both sides. The Plaintiffs approve of the Settlement Agreement, which

provides substantial benefits to the proposed Settlement Class. Class Counsel also independently analyzed the source of the corrosion, consulted with industry experts, and interviewed and collected documents from putative class members. In addition, the Settlement Agreement allows Class Counsel to conduct additional confirmatory discovery from Generac's Senior Corporate Quality Control Manager. SA § J.2.

### D.  The Settlement Class

If approved by the Court, the Settlement Agreement will provide substantial benefits to the following Settlement Class: (1) all current or former owners of a Class Generator who paid a $80 Inspection Program fee that was not reimbursed prior to the Preliminary Approval Date, and (2) all current owners of Class Generators that were not inspected pursuant to the Inspection Program prior to the Preliminary Approval Date. SA § A.37. Excluded from the Settlement Class are: (i) Generac, its officers, directors, affiliates, legal representatives, employees, successors, and assigns, and entities in which Generac has a controlling interest; (ii) the judge presiding over the Lawsuit and any member of the Court's staff and immediate family; and (iii) local, municipal, state, and federal governmental entities. *Id.*

### E.  Relief Benefiting the Settlement Class

The consideration to the Settlement Class consists primarily of two types of claims: reimbursements for past inspection fees, and one free inspection to Settlement Class Members who have not had an inspection pursuant to the inspection program moving forward. SA § C. To receive either form of relief, Settlement Class Members need only submit a simple, three-page Claim Form; to receive a benefit, some claimants will need to provide certain information in support of their claim. *See* Exhibit 1 to Settlement Agreement. SA § D.1. Claim Forms can also be submitted both through the Settlement Website and the mail. *Id.*

First, Settlement Class Members who paid for an inspection pursuant to the Inspection Program and the Inspection Notice Letter can file a claim for their unreimbursed, out-of-pocket inspection fee in the amount of $80.00. SA § C.1. Thus, Settlement Class Members will be made whole for past inspection fees paid pursuant to the Inspection Program.

Second, Settlement Class Members who have not had their plenum inspected through the Inspection Program are eligible to submit a Claim for a cost-free plenum inspection of their Class Generator by an Authorized Service Dealer. SA § C.2. Those Settlement Class Members simply need to attest that they have not had their plenum inspected through the Inspection program and: (i) their Class Generator has not received general maintenance or service from an Authorized Service Dealer since the start of the Inspection Program; or (ii) their Class Generator received general maintenance or service from an authorized service dealer since the start of the Inspection Program but it was nevertheless not examined for corrosion on the plenum surface (along with a supporting narrative statement to that effect); or (iii) that the Class Generator has corrosion on the plenum surface (along supporting photographic evidence with their Inspection Claim). *Id.* If the inspection reveals corrosion on the plenum surface, that Settlement Class Member will receive a free replacement of the fuel plenum (inclusive of parts and labor) which will be performed by a Generac Authorized Service Dealer. SA § C.3.

### F.  Attorneys' Fees, Costs, and Service Awards

Plaintiffs intend to seek attorneys' fees up to $1,500,000.00. SA § G.1; *see also* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Plaintiffs will also apply for service awards in the amount of $2,500 to each of the Plaintiffs ($5,000 total) in recognition of their time, costs, and effort in the Lawsuit.

*Id.* Plaintiffs' Attorneys' Fees, Cost and Service Awards will be in addition to the benefits provided directly to the Settlement Class and will not reduce or otherwise affect the benefits made available to Settlement Class Members. Generac has also reserved the right to oppose any Attorneys' Fee, Cost, and Service Award that it considers unreasonable. SA § G.1(b).

### G.  Notice to Settlement Class Members

The Settlement Agreement includes a comprehensive notice plan, which is to be paid for by Generac and overseen by KCC Class Action Services, LLC, an experienced Settlement Administrator. SA § A.34. Specifically, for Settlement Class Members that Generac has an email address for, they will receive notice via email. SA § D.8(a). For Settlement Class Members that Generac does not have an email address for, the Settlement Administrator will send the postcard Notice of Settlement through first class mail. *Id.* For Settlement Class Members eligible to submit a Reimbursement Claim, their addresses will be run through the National Change-of-Address Database. *Id.* If the notice is returned undeliverable, the Settlement Administrator will perform one advanced address search to re-mail the undeliverable notice. *Id.* Additionally, on a confidential basis, the parties will provide the Settlement Administrator with reasonably available information that identifies possible Settlement Class Members from their existing records. *Id.*

In addition, the Settlement Administrator will establish a Settlement Website (www.fuelplenumsettlement.com) that will provide, at minimum: (i) information concerning deadlines for filing a Claim Form, and the dates and locations of relevant Court proceedings, including the Final Approval Hearing; (ii) the toll-free phone number applicable to the Settlement; (iii) copies of the Settlement Agreement, the Notice of Settlement, the Claim Form, Court Orders regarding this Settlement, and other relevant Court documents, including Class Counsel's Motion for Approval of Attorneys' Fees, Costs, and Service Awards; and (iv) information concerning the

submission of Claim Forms, including the ability to submit Claim Forms electronically using an electronic signature service such as DocuSign through the Settlement Website. SA § D.8(d). The Settlement Website will also provide a serial number look-up where consumers can input their Generac home standby generator's serial number to check whether their generator is a Class Generator. *Id.* A toll-free number will also be established that can be used to: (i) request the Claims Form, the Notice of Settlement, and this Settlement Agreement; and (ii) obtain information about deadlines for filing a Claim Form, opting out of or objecting to the Settlement, and the scheduling of the Final Approval Hearing. SA § D.8(e).

Generac, through the Settlement Administrator, will also mail all notices required by 28 U.S.C. § 1715. SA § D.8(f). Further, Generac will advise its Authorized Service Dealers of the no-cost Inspection Claims available to Claimants, and continue to remind them to visually examine fuel systems (including but not limited to plenums) during general maintenance or service visits, and update the information on its website regarding the Inspection Program. SA § D.8(c). The Settlement Administrator will provide the parties with a declaration detailing all its efforts regarding the Notice Plan and its reach to the Settlement Class, which will be filed as an exhibit to Plaintiffs' motion for final approval of the settlement. SA § D.9.

### H.  The Release

In exchange for the foregoing relief, and subject to approval by the Court, Plaintiffs and Settlement Class Members who do not timely exclude themselves will be bound by a release of all claims arising out of or relating to the claims that were asserted in the Complaint (the "Released Claims"). The Released Claims extend to Generac and its related entities and persons. The Released Claims will not apply to any claims for death, personal injury, property damage (other than damage to the Class Generators related to the plenum), or subrogation. SA § A.30.

### III.    ARGUMENT

#### A.  The Settlement Warrants Preliminary Approval

The Court's review of a class action settlement is a two-step process consisting of preliminary approval and final approval. At this preliminary approval stage, "the Court is required to determine only whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *In re Nat'l Football League Players' Concussion Injury Litig. ("In re NFL")*, 301 F.R.D. 191, 198 (E.D. Pa. 2014) (quoting *Mehling v. New York Life Ins.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007) (citations omitted)). Under Rule 23, a settlement falls within the "'range of possible approval,' if there is a conceivable basis for presuming that the standard applied for final approval – fairness, adequacy, and reasonableness – will be satisfied." *In re NFL*, 301 F.R.D. at 198 (emphasis added) (citations omitted).

In addition, "a settlement agreement is entitled to a presumption of fairness when it resulted from arm's length negotiations between experienced counsel." *Hunter v. M-B Cos., Inc.*, No. 19-CV-04838, 2020 WL 4059898, at *3 (E.D. Pa. July 20, 2020); *see also Udeen v. Subaru of Am., Inc.*, No. 18 17334(RBK/JS), 2019 WL 4894568, at *2 (D.N.J. Oct. 4, 2019) ("A settlement is presumed fair when it results from 'arm's-length negotiations between experienced, capable counsel after meaningful discovery.'") (quoting *Rudel Corp v. Heartland Payment Sys., Inc.*, No. 16-cv-2229, 2017 WL 4422416, at *2 (D.N.J. Oct. 4, 2017)). This presumption applies in furtherance of the public policy favoring settlement, *see Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010), and "settlement of litigation is especially favored by courts in the class action setting." *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 144 (D.N.J. 2013). Moreover,

"the participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *In re ViroPharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016) (citation omitted).

The settlement here is the result of extensive, arm's-length negotiations between experienced counsel, and overseen by a nationally recognized mediator, who believe the settlement is in the best interests of their respective clients. Class Counsel verified the adequacy of the Settlement engaging in confirmatory discovery with Defendant throughout the mediation process and subsequent negotiations between counsel, which lasted approximately eight months. Sauder Dec., ¶¶ 11-13. The settlement is well supported and will eliminate the uncertainties and risks to the Parties from proceeding further in the litigation. Thus, preliminary approval should be granted.

Because there are no "obvious deficiencies" in the parties' Settlement Agreement in this case, nor any "grounds to doubt its fairness," the standards for granting preliminary approval are satisfied. This Settlement is fair, adequate, and reasonable; it is more than conceivable that the requirements for final approval will be satisfied, and Settlement Class Members will be provided with notice in a manner that satisfies the requirements of due process and Federal Rule of Civil Procedure 23(e). Therefore, Plaintiffs respectfully ask the Court to enter the proposed order, which will: (i) grant preliminary approval of the proposed settlement; (ii) find that the Settlement Class is likely to be certified pursuant to Federal Rule of Civil Procedure 23(b)(3); (iii) schedule a final approval hearing to consider final approval of the Settlement; and (iv) direct adequate notice to Settlement Class Members of the Settlement and their rights.

### B.   The *Girsh* Factors Support Preliminary Approval

Although the foregoing analysis is sufficient for the Court to grant preliminary approval of the proposed Settlement, a factor-by-factor analysis further buttresses this conclusion. The following nine factors inform the Court's analysis at the final approval stage:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).[2]

The court evaluates a class settlement "against the realistic, rather than theoretical potential for recovery after trial." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 323 (3d Cir. 2011) (en banc). In conducting this analysis, the court also "guard[s] against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re GMC Truck Fuel Tank Prods. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995); *see also In re: Shop-Vac Mktg. & Sales Practices Litig.*, No. 4:12-MD-2380, 2016 WL 3015219, at *2 (M.D. Pa. May 26, 2016) (noting that "a satisfactory

---

[2] Rule 23(e) was amended in December 2018 to specify uniform standards for settlement approval. Courts in this district have continued to apply the same legal standards to preliminary approval after the 2018 amendments. *See, e.g.*, *Udeen*, 2019 WL 4894568; *Smith*, 2019 WL 3281609. Further, "[t]he 2018 Committee Notes to Rule 23 recognize that, prior to this amendment, each circuit had developed its own list of factors to be considered in determining whether a proposed class action was fair[.]" *Huffman v. Prudential Ins. Co. of Am.*, 2:10-cv- 05135, 2019 WL 1499475, at *3 (E.D. Pa. Apr. 5, 2019) (citing Fed. R. Civ. P. 23(e)(2), Advisory Committee Notes). "[T]he goal of the amendment is not to displace any such factors, but rather to focus the parties [on] the 'core concerns' that motivate the fairness determination." *Id.* As such, the traditional *Girsh* factors continue to apply.

settlement may only amount to a hundredth or even a thousandth part of a single percent of the potential recovery.") (internal citations and quotations omitted). All of the *Girsh* factors that the Court can analyze now support preliminary approval.[3]

The Settlement affords complete relief to the Settlement Class. This litigation was initiated because of Plaintiffs' allegations of failures in Generac's original Inspection Program. Plaintiffs contend that Generac should have provided all relevant inspections for free instead of charging the Settlement Class Members $80 per inspection, and then refunding it only if "significant" corrosion was found. The Settlement provides that exact relief: any Settlement Class Members who paid $80 for an inspection and were not reimbursed will be eligible to submit a claim for reimbursement through the Settlement, and any Settlement Class Members who elected not to have an inspection because of the cost can now receive one free inspection.

The complexity, expense, and likely duration of the litigation supports preliminary approval because, without the Settlement, the parties would be engaged in contested motion practice and adversarial litigation for years. Generac filed a motion to dismiss Plaintiffs' Complaint. Plaintiffs have an opposition prepared and if the litigation were to continue, the Court would first need to rule on the pleadings. The claims advanced on behalf of the Settlement Class Members involve numerous complex legal and technical issues. Continued litigation would be time consuming and expensive, with no certainty of a favorable outcome through a nationwide class action.

The third factor, the stage of the proceedings and the amount of discovery completed, also supports preliminary approval. As noted above, the parties have exchanged confirmatory

---

[3] The reaction of the Settlement Class cannot be evaluated until final approval, after notice is issued and objections and opt-outs are submitted.

discovery. Sauder Dec. ¶ 12. Plaintiffs' counsel also conducted their own extensive independent investigation into the inspection program and the issue that causes corrosion on the fuel plenum of the Class Generators. Sauder Dec. ¶ 9. In addition, the Settlement contemplates further confirmatory discovery, including from Generac's Senior Corporate Quality Control Manager, which Plaintiffs will provide additional information on with their motion for final approval of the settlement. SA § I(2).

### C.   Certification of the Proposed Settlement Class is Appropriate

Plaintiffs submit that certification of the proposed Settlement Class for settlement purposes only is appropriate here. A "settlement class must meet Rule 23(a)'s requirements: numerosity, commonality, typicality, and adequacy of representation." *McDermid v. Inovio Pharms., Inc.*, No. 20-01402, 2023 WL 227355, at *2 (E.D. Pa. Jan. 18, 2023). Additionally, the settlement class "must also satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Here, Plaintiffs seek certification for settlement purposes only pursuant to Rule 23(b)(3), which requires that the questions of law or fact common to class members predominates over any questions affecting only individual members, and that the class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). As discussed further below, the Settlement Class satisfies each of these requirements.

### 1.   *Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement is generally met if the class size exceeds forty. *Rose v. Travelers Home & Marine Ins. Co.*, No. 19-977, 2020 WL 4059613, at *4 (E.D. Pa. July 20, 2020) (citing *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001);

*Wood v. AmeriHealth Caritas Servs., LLC*, No. 17-3697, 2020 WL 1694549, at \*4 (E.D. Pa. Apr. 7, 2020) (same). Here, the Settlement Class consists of tens of thousands of persons. Therefore, the numerosity requirement is satisfied.

### 2. Commonality

Commonality requires that questions of law or fact are common to the class. Fed. R. Civ. P. 23(a)(2). This requirement is satisfied where the plaintiffs and members of the putative class share at least one question of law or fact. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527-28 (3d Cir. 2004); *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Indeed, the commonality bar "is not a high one." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013). The Third Circuit has "acknowledged commonality to be present even when not all plaintiffs suffered an actual injury, when plaintiffs did not bring identical claims, and most dramatically, when some plaintiffs' claims may not have been legally viable[.]" *Id; see also Baby Neal*, 43 F.3d at 56; *In re Prudential Ins. Co. Sales Litig.*, 148 F.3d 282, 310 (3d Cir. 1998); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 299 (3d Cir. 2011). The focus of commonality is on the defendant's conduct. *Id.* (citing *Sullivan*, 667 F.3d at 299 (explaining that the focus is not on the strengths of each plaintiff's claim but "on whether the defendant's conduct was common as to all of the class members"); *Warfarin*, 391 F.3d at 528 (focusing the commonality inquiry on the defendant's conduct, not "on the conduct of individual class members"); *Baby Neal*, 43 F.3d at 56 (considering whether defendant engaged in a common course of conduct toward the class members).

Here, there are several common factual and legal questions, including whether the inspection fee violated the terms of Generac's express warranties and implied warranties; whether the inspection fee violated the Magnuson-Moss Warranty Act; whether Plaintiffs and the Class

13

have actionable claims; and the amount of recoverable damages. Therefore, commonality is satisfied.

### 3. *Typicality*

Typicality requires that Plaintiffs' claims be "typical of the claims or defenses of the class." *Ebner v. Merchants & Med. Credit Corp.*, No. 14-06882, 2017 WL 1079966, at *2 (E.D. Pa. Mar. 22, 2017) (quoting Fed. R. Civ. P. 23(a)(3)). The typicality inquiry focuses on "whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Id.* (citing *Baby Neal*, 43 F.3d at 57). "Where claims of the representative plaintiffs arise from the same alleged wrongful conduct on the part of the defendant, the typicality prong is satisfied." *Warfarin*, 391 F.3d at 532. Here, Plaintiffs' claims arise out of the same alleged conduct by Generac related to its Inspection Program and specifically, its imposition of an inspection fee. As such, Rule 23(a)(3)'s typicality requirement is also met.

### 4. *Adequacy*

The final requirement of Rule 23(a) provides that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining whether Class Counsel fairly and adequately protects the interests of the class, the Third Circuit considers various factors, such as Class Counsel's qualifications and experience and whether Class Counsel has acted at arm's length from the defendant. *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995). *See also McDermid*, 2023 WL 227355, at *2. Additionally, the Third Circuit considers whether the named plaintiffs' interests are aligned or antagonistic to those of other settlement class members. *Teh Shou Kao v. CardConnect Corp.*, No. 16-cv-5707, 2021 WL 698173, at *5 (E.D. Pa. Feb. 23, 2021).

14

Here, the Plaintiffs are adequate because Plaintiff McMahon paid for the inspection but was not reimbursed by Generac, and Plaintiff Goldberg did not pay for an inspection because he contends Generac should pay for the cost, regardless of whether "significant corrosion" was later found. Thus, the Plaintiffs and the Settlement Class allege to have suffered similar injuries based on the same conduct by Generac. The Plaintiffs recognize and accept their responsibilities as class representatives and each has actively participated in the litigation of this case and communicated regularly with their attorneys about the proceedings. Additionally, Class Counsel has experience with similar complex class action litigation lawsuits. *See* Sauder Dec., ¶¶ 3-8. Therefore, both the Class Representatives and Class Counsel fairly and adequately protect the interests of the class pursuant to Rule 23(a)(4).

### 5.  *Predominance and Superiority*

The Court should certify the Settlement Class pursuant to Rule 23(b)(3), which has two components: predominance and superiority. The predominance component assesses whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *McDermid*, 2023 WL 227355, at *3. The court's inquiry focuses on whether the defendant's conduct is common to all class members and whether all class members were harmed by the defendant's conduct. *Id; see also Sullivan*, 667 F.3d at 298. In the past, this Court has certified a settlement class in a breach of contract action. *Rose*, 2020 WL 4059613, at *5. Here, like in *Rose*, Plaintiffs allege various breach of warranties. At bottom, this case hinges on whether Generac's Inspection Program violated its express and implied warranties. This determination is based on the language of Generac's warranties, which are substantially similar across all Settlement Class Members. Thus, predominance is met.

Superiority requires the Court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Wood*, 2020 WL 1694549 at *5 (citing *Warfarin*, 391 F.3d at 534). Rule 23(b)(3) directs the Court to consider various factors, including:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Pursuing the relatively small claims of the potentially tens of thousands of Class Members is not economically feasible, neither for the Settlement Class Members or the Court. *See Ebner*, 2017 WL 1079966 at *3 (quoting *Good v. Nationwide Credit, Inc.*, 314 F.R.D. 141 (E.D. Pa. 2016) ("Even if a mere fraction of the members of the putative class were to litigate their claims individually, the courts would be significantly burdened by numerous lawsuits.")); *see also In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, No. 17-341, 2022 WL 16533571, at *3 (E.D. Pa. Oct. 28, 2022)  ("Where there are potentially thousands of shareholders within the proposed class, class resolution is preferable to multiple relitigations that would drain both the parties and the courts of their resources."). Moreover, a settlement reduces the costs of individual plaintiffs pursuing their claims against the defendant on an individual basis. *See Wood*, 2020 WL 1694549, at *5. The settlement provides Plaintiffs and Class Members with fair, adequate, and prompt relief. Thus, Plaintiffs have satisfied the predominance component of Rule 23(b)(3). And because the parties seek to resolve this case through a settlement, any manageability issues that could have arisen at trial are marginalized. *Sullivan*, 667 F.3d at 302-03.

In sum, because the requirements of Rule 23(a) and (b)(3) are met, certification of the Settlement Class is appropriate.

### D.  The Notice Plan Satisfies Due Process and Rule 23(e)

Under Federal Rule of Civil Procedure 23(e), class members who would be bound by a settlement are entitled to reasonable notice before the settlement is approved. *See* Fed. Jud. Ctr., Manual for Complex Litig. Fourth, § 30.212 (2004). Under Rule 23(b)(3), "the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-md-01998, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009) (citing Fed. R. Civ. P. 23(c)(2)(B)). To satisfy these standards and "comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *Id.* (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)).

The proposed Notice – Exhibits 2 and 3 to the Settlement Agreement – includes all legal requirements and explains the settlement concisely using clear, simple terms. *See* Fed. R. Civ. P. 23(c)(2)(B). The notice plan described above and set forth in Section D.8 of the Settlement Agreement provides the best notice practicable under the circumstances. *See Henderson v. Volvo Cars of N. Am., LLC*, No. 09-4146 CCC, 2013 WL 1192479, at *1 (D.N.J. Mar. 22, 2013). KCC, an experienced claims administrator, will oversee the Notice Plan, and will then use this information to prepare the Notice that will be sent to all Settlement Class Members. In the first instance, email will be used to send the notices. For any Settlement Class Members that Generac does not have email address for, notice will be provided via first-class mail. The Notice of Settlement will also be posted on the Settlement Website.

Plaintiffs thus request that the Court approve the proposed Notice Plan.

### E.  A Final Approval Hearing Should Be Scheduled

Finally, Plaintiffs request that the Court schedule a final approval hearing to determine whether to grant final approval to the settlement, consider Class Counsel's request for attorneys' fees, expenses, and service awards for the Class Representatives, consider any objections and exclusions, and determine whether to dismiss this action with prejudice. *See* Fed. Jud. Ctr., Manual for Complex Litig. Fourth, § 30.44 (2004); *In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d 570, 581-83 (3d Cir. 2014). Plaintiffs also respectfully suggest the following schedule:

| Event | Date |
|---|---|
| Notice Date | 70 days after entry of the preliminary approval order |
| Class Counsel Fee and Service Award Application | 30 days after the Notice Date (100 days after entry of the preliminary approval order) |
| Opt-Out or Objection Deadline | 60 days after the Notice Date (130 days after entry of the preliminary approval order) |
| Final Approval Motion | 14 days prior to the Final Approval Hearing (130 days after the entry of the preliminary approval order) |
| Final Approval Hearing | At least 74 days after the Notice Date (144 days after entry of the preliminary approval order) |
| Claims Forms Due | 90 days from the Notice Date (160 days after entry of the preliminary  approval order) |

## IV.   CONCLUSION

Plaintiffs respectfully request that this Court enter an Order: (1) finding that this case is likely to be certified as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) for the purpose of effectuating a class action settlement; (2) preliminarily approving the settlement; and (3) directing notice to the Settlement Class Members.

DATED: February 3, 2023                               Respectfully submitted,

By:     */s/ Joseph G. Sauder*
Joseph G. Sauder
Joseph B. Kenney

**Sauder Schelkopf LLC**
1109 Lancaster Avenue
Berwyn, PA 19312
Phone: (888) 711-9975
jgs@sstriallawyers.com
jbk@sstriallawyers.com

*Counsel for Plaintiffs and the
Proposed Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing *PLAINTIFFS'*
*MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF*
*CLASS ACTION SETTLEMENT* was filed via the Court's CM/ECF system, thereby electronically
serving it on all counsel of record.

*/s/ Joseph G. Sauder*
Joseph G. Sauder