**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GREG MCMAHON and ADAM GOLDBERG, | |
| Plaintiffs, | |
| v. | Civil Action No. 2:21-cv-05660 |
| GENERAC POWER SYSTEMS, INC., | |
| Defendant. | |

**<u>PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................................... 1

II.     FACTUAL BACKGROUND ...................................................................................... 1

        A.      Plaintiffs' Allegations and Pre-Litigation Investigation ................................... 1

        B.      History of the Litigation.................................................................................... 2

        C.      The Parties' Settlement Negotiations................................................................ 3

        D.      The Settlement Class......................................................................................... 4

        E.      Relief Benefiting the Settlement Class ............................................................. 4

        F.      Attorneys' Fees, Costs, and Service Awards .................................................... 5

        G.      Notice to Settlement Class Members ................................................................ 5

        H.      The Release ....................................................................................................... 7

        I.      The Preliminary Approval Order ...................................................................... 7

III.    ARGUMENT ............................................................................................................... 8

        A.      The Settlement is Entitled to a Presumption of Fairness .................................. 8

        B.      The *Girsh* Factors Support Preliminary Approval............................................ 10

        C.      The *Prudential Factors* .................................................................................... 15

        D.      The Court Should Reaffirm Certification of the Settlement Class .................. 17

        E.      The Notice Plan Satisfied Due Process and Rule 23(e)................................... 17

IV.     CONCLUSION........................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

*California v. Teva Pharm. Indus.*,
No. 19-3281, 2020 U.S. Dist. LEXIS 102992 (E.D. Pa. June 10, 2020) ...............................14

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ....................................................................................................8

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ........................................................................................ *passim*

*Huffman v. Prudential Ins. Co. of Am.*,
2:10-cv- 05135, 2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) ........................................ *passim*

*In re Baby Prods. Antitrust Litig.*,
708 F.3d 163(3d Cir. 2013) ...................................................................................................16

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ....................................................................................................8

*In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*,
333 F.R.D. 364 (E.D. Pa. 2019) .............................................................................................16

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ......................................................................................................8

*In re National Football League Players Concussion Injury Litig.*,
821 F.3d 410 (3d. Cir. 2016) ......................................................................................8, 14, 18

*In re Prudential Ins. Co. Am. Sales Practice Litig.*,
148 F.3d 283 (3d Cir. 1998) .............................................................................................11, 16

*In re Shop-Vac Mktg. & Sales Practices Litig.*,
MDL No. 2380, 2016 U.S. Dist. LEXIS 69345, at *11 (M.D. Pa. May 25, 2016) ................14

*McDermid v. Inovio Pharms., Inc.*,
No. CV 20-01402, 2023 WL 227355 (E.D. Pa. Jan. 18, 2023) ...................................... *passim*

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950) ........................................................18

*Shapiro v. All. MMA, Inc.*,
No. 17-2583, 2018 U.S. Dist. LEXIS 108132 (D.N.J. June 28, 2018) ......................................9

*Udeen v. Subaru of Am., Inc.*,
No. 18-17334, 2019 U.S. Dist. LEXIS 172460 (D.N.J. Oct. 4, 2019) ..............................8, 10

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
2020 U.S. Dist. LEXIS 69614 (E.D. Pa. April 20, 2020) ........................................................16

*Yaeger v. Subaru of Am., Inc.*,
No. 14-cv-4490, 2016 WL 4541861 (D.N.J. Aug. 31, 2016) ......................................... *passim*

**<u>Statutes</u>**                                                                 **<u>Pages</u>**

28 U.S.C. § 1715 ........................................................................................................................18

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

## I.      INTRODUCTION

After the Court issued its order granting preliminary approval to the settlement, approximately 229,000 notices were sent to owners of the Class Generators.[1] No Settlement Class Members have submitted objections, and only 15 opt-outs have been received. The reason for the clear support for the Settlement is obvious, as it provides full relief for Settlement Class Members. For any individuals who previously paid inspection fees that were not reimbursed, they are eligible for full reimbursement. For Settlement Class Members that did not have an inspection performed, they are eligible for a free inspection. In addition, Generac sent notice to all of its Authorized Service Dealers informing them that all Class Generators are eligible for one no-cost inspection of their fuel system. Moreover, the Settlement benefits are now available to owners of certain Generac generators nationwide. Because of the overwhelming support for the Settlement, along with the substantial relief offered through the Settlement, Plaintiffs respectfully request that the Court grant final approval to the settlement.

## II.     FACTUAL BACKGROUND

### A.  Plaintiffs' Allegations and Pre-Litigation Investigation

Before filing this Action, Plaintiffs' counsel conducted an extensive investigation into the alleged corrosion of the plenum in the Class Generators. This investigation included interviewing members of the putative class and reviewing their documents, researching consumer reporting on various websites, reviewing Generac's manuals and other materials, researching potential causes of action, speaking with employees of Generac's authorized service dealerships, communicating

---

[1] The capitalized terms used herein are defined in Section A of the Settlement Agreement. *See* ECF No. 22-1 (hereafter, "SA").

with consulting experts in the field of generator systems, and drafting a detailed Complaint. Declaration of Joseph G. Sauder, ECF No. 21-2, ¶ 9 (hereafter, "Sauder Dec.").

The named Plaintiffs are residents of Pennsylvania and Virginia. Complaint, ECF No. 1, at ¶¶ 9, 15. Plaintiff McMahon purchased an extended warranty from Generac, which provided him with warranty coverage until 2024. ¶ 11. In December of 2020, Plaintiff McMahon received a letter from Generac that recommended he pay $80 for an inspection to detect the presence of corrosion along the fuel line, but also stated that he would only be reimbursed if the fuel plenum was found to be "significantly compromised." ¶ 13. Plaintiff McMahon paid the $80 inspection fee, but Generac did not reimburse him. ¶ 14. In March of 2021, Plaintiff Goldberg received a similar letter from Generac recommending that he pay $80 for an inspection, which also stated that he would only be reimbursed if the fuel plenum was found to be "significantly compromised." ¶ 19. Plaintiff Goldberg did not pay for the inspection, as he believed Generac should perform it at no cost to him, regardless of its findings. ¶ 20. Plaintiffs' Complaint seeks certification of a Nationwide Class as well as subclasses in Pennsylvania and Virginia. ¶¶ 36-37.  The Complaint alleges claims for violations of the Magnuson-Moss Warranty Act (¶¶ 45-61), as well as for breaches of express warranty (¶¶ 62-66) and implied warranty (¶¶ 67-74).

### B. History of the Litigation

Plaintiffs filed the initial Complaint in this Action on December 30, 2021. ECF No. 1. Judge Petrese B. Tucker granted two extensions to Generac's deadline to respond to Plaintiffs' Complaint. ECF Nos. 7, 11. On May 31, 2022, the Action was reassigned to Judge Gene E.K. Pratter. ECF No. 13. On June 2, 2022, the Action was reassigned to Your Honor. ECF No. 14. On June 6, 2022, the Court entered an additional extension for Generac to respond to Plaintiffs'

Complaint, and on September 30, 2022, Generac filed a motion to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6). ECF Nos. 15, 16.

Plaintiffs investigated and drafted (but did not file) a response to Generac's motion to dismiss. Sauder Dec., ECF No. 21-2, ¶ 10. Due to the advanced stage of settlement negotiations between the parties, the parties sought three extensions of time to extend Plaintiffs' opposition deadline, which the Court granted. ECF Nos. 18-20. Generac's motion to dismiss allowed the parties to assess the strengths and weaknesses of further litigation and assisted the parties throughout settlement negotiations.

### C.  The Parties' Settlement Negotiations

On May 16, 2022, the Parties engaged in an in-person mediation session with Judge Diane M. Welsh (Ret.) at JAMS' Philadelphia office. Sauder Dec., ECF No. 21-2, ¶ 11. The Parties made significant progress during that mediation, and continued negotiations over the following eight months with further assistance from Judge Welsh. In connection with the settlement negotiations, the Parties exchanged confirmatory discovery subject to Rule 408 of the Federal Rules of Evidence. *Id.* ¶ 12. After confirmatory discovery and the Parties' protracted negotiations, the Parties executed the Settlement Agreement on February 3, 2023. *Id.* ¶ 13.

The terms of the Settlement Agreement (previously submitted at ECF No. 22-1) are the result of arm's-length negotiations between experienced counsel for both sides. The Plaintiffs approve of the Settlement Agreement, which provides substantial benefits to the proposed Settlement Class. Class Counsel also independently analyzed the source of the corrosion, consulted with industry experts, and interviewed and collected documents from putative class members. In addition, the Settlement Agreement allows Class Counsel to conduct additional confirmatory discovery from Generac's Senior Corporate Quality Control Manager. SA § J.2.

3

### D.  The Settlement Class

If approved by the Court, the Settlement Agreement will provide substantial benefits to the following Settlement Class: (1) all current or former owners of a Class Generator who paid a $80 Inspection Program fee that was not reimbursed prior to the Preliminary Approval Date, and (2) all current owners of Class Generators that were not inspected pursuant to the Inspection Program prior to the Preliminary Approval Date. SA § A.37. Excluded from the Settlement Class are: (i) Generac, its officers, directors, affiliates, legal representatives, employees, successors, and assigns, and entities in which Generac has a controlling interest; (ii) the judge presiding over the Lawsuit and any member of the Court's staff and immediate family; and (iii) local, municipal, state, and federal governmental entities. *Id.*

### E.  Relief Benefiting the Settlement Class

The consideration to the Settlement Class consists primarily of two types of claims: reimbursements for past inspection fees, and one free inspection to Settlement Class Members who have not had an inspection pursuant to the inspection program moving forward. SA § C. To receive either form of relief, Settlement Class Members need only submit a simple, three-page Claim Form; to receive a benefit, some claimants will need to provide certain information in support of their claim. *See* Exhibit 1 to Settlement Agreement. SA § D.1. Claim Forms can also be submitted both through the Settlement Website and the mail. *Id.*

First, Settlement Class Members who paid for an inspection pursuant to the Inspection Program and the Inspection Notice Letter can file a claim for their unreimbursed, out-of-pocket inspection fee in the amount of $80.00. SA § C.1. Thus, Settlement Class Members will be made whole for past inspection fees paid pursuant to the Inspection Program.

Second, Settlement Class Members who have not had their plenum inspected through the Inspection Program are eligible to submit a Claim for a cost-free plenum inspection of their Class Generator by an Authorized Service Dealer. SA § C.2. Those Settlement Class Members simply need to attest that they have not had their plenum inspected through the Inspection program and: (i) their Class Generator has not received general maintenance or service from an Authorized Service Dealer since the start of the Inspection Program; or (ii) their Class Generator received general maintenance or service from an authorized service dealer since the start of the Inspection Program but it was nevertheless not examined for corrosion on the plenum surface (along with a supporting narrative statement to that effect); or (iii) that the Class Generator has corrosion on the plenum surface (along supporting photographic evidence with their Inspection Claim). *Id.* If the inspection reveals corrosion on the plenum surface, that Settlement Class Member will receive a free replacement of the fuel plenum (inclusive of parts and labor) which will be performed by a Generac Authorized Service Dealer. SA § C.3.

### F.  Attorneys' Fees, Costs, and Service Awards

On August 11, 2023, Plaintiffs filed their motion for attorneys' fees, which seeks $1,500,000 in attorneys' fees and $2,500 to each of the Plaintiffs in recognition of their time, costs, and effort in the Lawsuit. Plaintiffs' requests are in addition to the benefits provided directly to the Settlement Class and will not reduce or otherwise affect the benefits made available to Settlement Class Members. While Generac reserved the right to oppose Plaintiffs' motion, it has not done so. SA § G.1(b).

### G.  Notice to Settlement Class Members

The Settlement Agreement includes a comprehensive notice plan, which was paid for by Generac and overseen by KCC Class Action Services, LLC, an experienced Settlement

Administrator. SA § A.34. Specifically, for Settlement Class Members that Generac had an email address for, they received notice via email. SA § D.8(a). For Settlement Class Members that Generac did not have an email address for, the Settlement Administrator sent the postcard Notice of Settlement through first class mail. *Id.* For Settlement Class Members eligible to submit a Reimbursement Claim, their addresses were run through the National Change-of-Address Database. *Id.* If the notice was returned undeliverable, the Settlement Administrator performed one advanced address search to re-mail the undeliverable notice. *Id.* Additionally, on a confidential basis, the parties provided the Settlement Administrator with reasonably available information that identifies possible Settlement Class Members from their existing records. *Id.*

In addition, the Settlement Administrator established a Settlement Website (www.fuelplenumsettlement.com) that provided: (i) information concerning deadlines for filing a Claim Form, and the dates and locations of relevant Court proceedings, including the Final Approval Hearing; (ii) the toll-free phone number applicable to the Settlement; (iii) copies of the Settlement Agreement, the Notice of Settlement, the Claim Form, Court Orders regarding this Settlement, and other relevant Court documents, which will include Class Counsel's Motion for Approval of Attorneys' Fees, Costs, and Service Awards; and (iv) information concerning the submission of Claim Forms, including the ability to submit Claim Forms electronically using an electronic signature service such as DocuSign through the Settlement Website. SA § D.8(d). The Settlement Website also provides a serial number look-up where consumers can input their Generac home standby generator's serial number to check whether their generator is a Class Generator. *Id.* A toll-free number was also established that can be used to: (i) request the Claims Form, the Notice of Settlement, and this Settlement Agreement; and (ii) obtain information about

deadlines for filing a Claim Form, opting out of or objecting to the Settlement, and the scheduling of the Final Approval Hearing. SA § D.8(e).

Generac, through the Settlement Administrator, mailed all notices required by 28 U.S.C. § 1715. SA § D.8(f). Generac also advised its Authorized Service Dealers of the no-cost Inspection Claims available to Claimants and continues to remind them to visually examine fuel systems (including but not limited to plenums) during general maintenance or service visits, and updated the information on its website regarding the Inspection Program. SA § D.8(c). The Settlement Administrator will provide the parties with a declaration detailing all its efforts regarding the Notice Plan and its reach to the Settlement Class, which is being filed contemporaneously herewith. SA § D.9.

## H.  The Release

In exchange for the foregoing relief, and subject to approval by the Court, Plaintiffs and Settlement Class Members who do not timely exclude themselves will be bound by a release of all claims arising out of or relating to the claims that were asserted in the Complaint (the "Released Claims"). The Released Claims extend to Generac and its related entities and persons. The Released Claims will not apply to any claims for death, personal injury, property damage (other than damage to the Class Generators related to the plenum), or subrogation. SA § A.30.

## I.  The Preliminary Approval Order

On April 18, 2023, the Court issued its Order Granting Preliminary Approval to Class Action Settlement, Provisionally Certifying Settlement Class, Directing Notice to the Settlement Class, and Scheduling Final Approval Hearing (the "Order"). ECF No. 23. The Order set the Final Approval Hearing for 10:00 a.m. on September 27, 2023 in Courtroom 11-A. *Id.* at 9. Settlement Class Members had until August 26, 2023 to either object to or opt-out of the settlement. For

Settlement Class Members who did not opt-out, they have until September 25, 2023 to submit claims. No Settlement Class Members have objected to the settlement and there have only been 15 opt-outs. When compared against the approximately 229,000 notices sent, the opt-outs represent approximately 0.0065% of the Settlement Class.

## III.   ARGUMENT

Court approval is required for the settlement of class actions. Fed. R. Civ. P. 23(e). In order to grant final approval to the proposed class action Settlement, the Court must hold a hearing and find the settlement "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). While courts examine each settlement individually, they are guided by a "strong judicial policy in favor of class action settlement." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). By entering into a voluntary settlement, the parties can benefit substantially by avoiding "costs and risks of a lengthy and complex trial." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). This is particularly true in class action trials. *Id.*

### A.  The Settlement is Entitled to a Presumption of Fairness

This Settlement meets the criteria for a presumption of fairness. The requirements to qualify for a presumption of fairness are as follows: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re National Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d. Cir. 2016) (citing and quoting in part *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)).

The Settlement is the product of arm's length negotiations undertaken over a substantial period of time and with the assistance of Diane Welsh of JAMS. "The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were

conducted at arm's length and without collusion between the parties." *Shapiro v. All. MMA, Inc.*, No. 17-2583 (RBK/AMD), 2018 U.S. Dist. LEXIS 108132, at *6 (D.N.J. June 28, 2018) (citation and internal marks omitted); *see also McDermid v. Inovio Pharms., Inc.*, No. CV 20-01402, 2023 WL 227355, at *4 (E.D. Pa. Jan. 18, 2023) (finding settlement entitled to presumption of fairness in part because "negotiations occurred at arm's length, including via a nationally recognized mediator in securities matters").

Moreover, the parties engaged in sufficient discovery and exchange of information, including confirmatory discovery and a confirmatory interview of a Generac employee, which enabled Plaintiffs to gain "a clear understanding of the strengths and weaknesses of their case," *Udeen v. Subaru of Am., Inc.*, No. 18-17334 (RBK/JS), 2019 U.S. Dist. LEXIS 172460, at *8 (D.N.J. Oct. 4, 2019), and confirm that the proposed Settlement is fair, reasonable, and adequate.

The requirement of experienced counsel has also been met here. Throughout the litigation of this Action, the parties have been represented by counsel highly experienced in class action litigation and settlement negotiations. *McDermid*, 2023 WL 227355, at *4 (finding "Plaintiffs' counsel has well-documented experience handling securities class actions").

Finally, the notification of the Settlement Class has resulted in a microscopically small number of opt outs and no objections. The deadline by which Settlement Class members could exclude themselves from the Settlement or object to its terms was August 26, 2023. Of the approximately 229,000 notices sent, Plaintiffs have only received 15 opt outs. Of the total notices sent, the opt-out percentage of 0.0065% constitutes only a miniscule fraction of the Settlement Class. This demonstrates overwhelming support for the Settlement from the Settlement Class Members. *Id.* (finding "an initial presumption of fairness applied" in part because "only one class member objected to the settlement").

### B.  The *Girsh* Factors Support Preliminary Approval

Having satisfied each of the requirements for a presumption of fairness, Plaintiffs now turn

to the *Girsh* multifactor test. The Third Circuit requires the consideration of the following factors

when granting final approval to a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2)
> the reaction of the class to the settlement; (3) stage of the
> proceedings and the amount of discovery completed; (4) risks of
> establishing liability; (5) risks of establishing damages; (6) risks of
> maintaining the class action through the trial; (7) ability of the
> defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible
> recovery; and (9) the range of reasonableness of the settlement fund
> to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).[2]

The first factor for consideration, "the complexity, expense, and likely duration of the

litigation", supports approval. Without the Settlement, the parties would be engaged in contested

motion practice and adversarial discovery for years. The claims advanced on behalf of the

Settlement Class involve numerous complex legal and technical issues. Continued litigation would

be complex, time consuming and expensive, with no certainty of a favorable outcome. Conversely,

the Settlement secures substantial benefits for the Settlement Class without the delay, risk and

uncertainty of continued litigation. *See McDermid*, 2023 WL 227355, at *7 (observing "this

---

[2] Rule 23(e) was amended in December 2018 to specify uniform standards for settlement approval.
Courts in this district have continued to apply the same legal standards to preliminary approval
after the 2018 amendments. *See, e.g.*, *Udeen*, 2019 WL 4894568; *Smith*, 2019 WL 3281609.
Further, "[t]he 2018 Committee Notes to Rule 23 recognize that, prior to this amendment, each
circuit had developed its own list of factors to be considered in determining whether a proposed
class action was fair[.]" *Huffman v. Prudential Ins. Co. of Am.*, 2:10-cv- 05135, 2019 WL 1499475,
at *3 (E.D. Pa. Apr. 5, 2019) (citing Fed. R. Civ. P. 23(e)(2), Advisory Committee Notes). "[T]he
goal of the amendment is not to displace any such factors, but rather to focus the parties [on] the
'core concerns' that motivate the fairness determination." *Id.* As such, the traditional *Girsh* factors
continue to apply.

litigation required complex and skillful work on the party of both parties" and "[s]hould it continue, the parties would have to continue retaining experts, incurring additional expenses" and "[s]hould the case go to trial, Plaintiffs will have to obtain class certification and maintain the class through trial"); *Yaeger v. Subaru of Am., Inc.*, No. 14-cv-4490(JBS)(KMW), 2016 WL 4541861, at *9 (D.N.J. Aug. 31, 2016) ("The longer the litigation extended, the more the owners of affected class vehicles would suffer.").

The Settlement also affords complete relief to the Settlement Class. This litigation was initiated because of Plaintiffs' allegations of failures in Generac's original Inspection Program. Plaintiffs contend that Generac should have provided all relevant inspections for free instead of charging the Settlement Class Members $80 per inspection, and then refunding it only if "significant" corrosion was found. The Settlement provides that exact relief: any Settlement Class Members who paid $80 for an inspection and were not reimbursed will be eligible to submit a claim for reimbursement through the Settlement, and any Settlement Class Members who elected not to have an inspection because of the cost can now receive one free inspection.

The second factor supports approval because the reaction of the class, as measured by the number of objections and opt-outs, demonstrates overwhelming support for the Settlement. Of the approximately 229,000 notices sent, there are no objections and only 15 opt-out requests. An opt-out percentage of 0.0065% shows the Settlement Class supports the approval of the Settlement. *See, e.g.*, *In re Prudential*, 148 F.3d at 318 (finding 19,000 opt outs out of 8 million policy holders, or 0.24%, to be "truly insignificant"); *McDermid*, 2023 WL 227355, at *7 (finding eleven objections and one objection out of 576,695 notices to be "overwhelmingly positive").

The third factor, the stage of the proceedings and the amount of discovery completed, also supports preliminary approval. Class Counsel conducted their own extensive independent

investigation into the inspection program and the issue that causes corrosion on the fuel plenum of the Class Generators. In addition, the parties engaged in confirmatory discovery, which included the exchange of documents and information. Plaintiffs took the confirmatory interview of Generac's Senior Corporate Quality Control Manager. The confirmatory interview covered the identification of the Class Generators, the manner in which inspections will be conducted under the Settlement, additional notification measures to Generac's Authorized Service Dealers, and the costs associated with servicing the Class Generators and replacing the plenums, among other things. *Yaeger*, 2016 WL 4541861, at *9 (finding stage of proceedings supported final approval where plaintiffs' counsel "conducted its own investigation, researched and responded to numerous inquiries from class members, received and analyzed documents produced by defendants, and conducted confirmatory deposition discovery of defendant's Rule 30 (b) (6) designated deponent"). The amount of discovery completed, along with the Settlement representing a full recovery to the Settlement Class, supports approval.

The fourth, fifth, and sixth factors all analyze the risk of continued litigation. If the parties had been unable to resolve this case through the Settlement, further litigation would have been protracted and costly. Class Counsel have litigated many consumer protection class actions that have taken several years to conclude, and some have lasted over a decade factoring in the appeal of class certification orders. Before ever approaching a trial in this case, the parties likely would have fully briefed motions to dismiss, class certification (along with a potential Rule 23(f) appeal), *Daubert* motions, and summary judgment – in addition to expending considerable resources on electronic discovery, depositions, and expert witnesses. It is therefore unlikely that the case would have reached trial before 2024, with post-trial activity to follow. By that time, many Settlement Class Members may have experienced issues with the plenums on their Class Generators, and

without the benefits offered by the Settlement. *See McDermid*, 2023 WL 227355, at *8 (observing continued hurdles at summary judgment, trial, and appeal were significant and further observing even if the Court granted class certification, "classes may be decertified or modified at any time if the class becomes unmanageable"); *Yaeger*, 2016 WL 4541861, at *9 (holding prospect of "protracted motion practice" involving the "nuances of various state laws" as well as "costly discovery" weighed in favor of settlement). Perhaps most importantly for these factors, the foregoing analysis presumes Plaintiffs' Complaint would have survived Defendant's pending motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Moreover, Generac maintains that there is no issue with the Class Generators, and it did not breach any express or implied warranties. *McDermid*, 2023 WL 227335, at *8 (noting defendants disputed liability for conduct at issue). In addition, Generac maintains that most Settlement Class members have not experienced, and indeed may never experience, any alleged malfunction of the plenum on their Class Generators. If the litigation were to continue, Generac would also likely assert numerous defenses which could potentially prevent or substantially reduce many Settlement Class Members' recovery, such as statutes of limitation, lack of standing, lack of privity, and other common law and/or statutory defenses applicable to particular Settlement Class Members.

These individualized defenses pertaining to the various Settlement Class Members yield no guarantee of recovery and render the prospects of class certification risky. In addition, there are numerous other individualized factors that could adversely affect the ability to certify a class if this action is litigated, including: the manner in which each Class Generator was maintained, each Settlement Class Member's purchase facts, circumstances and decisions; whether and to what extent any Settlement Class Member experienced a fuel plenum issue; the circumstances and root

causes of any alleged fuel plenum issue; and whether, when and under what circumstances a Settlement Class Member presented the alleged problem to an Generac or its Authorized Service Dealers for diagnosis and repair. *Yaeger*, 2016 WL 4541861, at *10 ("This is a case requiring particular expertise about the design and servicing of engine oil systems, and the establishment of a defect for purposes of claims for breach of warranty was certainly questionable."). In addition, material differences in state laws among the 50 states could create substantial obstacles to nationwide class certification. In contrast, these individualized issues do not preclude class certification for settlement purposes, since the Court will not be faced with the significant manageability problems of a trial. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Courts routinely find the seventh factor – the defendant's ability to withstand greater judgement – to be neutral. Such a factor is typically only relevant when "the defendant's professed inability to pay is used to justify the amount of the settlement." *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 440. This not a factor here.

Finally, the remaining *Girsh* factors – the range of reasonableness of the settlement both independently and weighed against the risk of further litigation – support approval. The settlement must be judged "against the realistic, rather than theoretical potential for recovery after trial." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 323 (3d Cir. 2011). In conducting this analysis, the court must "guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *California v. Teva Pharm. Indus.*, No. 19-3281, 2020 U.S. Dist. LEXIS 102992, at *32-33 (E.D. Pa. June 10, 2020); *see also In re Shop-Vac Mktg. & Sales Practices Litig.*, No. MDL No. 2380, 2016 U.S. Dist. LEXIS 69345, at *11 (M.D. Pa. May 25, 2016) ("The proposed settlement amount does not have to be dollar-for-dollar the equivalent of the claim....

14

and a satisfactory settlement may only amount to a hundredth or even a thousandth part of a single percent of the potential recovery.") (internal citations and quotations omitted). The settlement provides full relief to the Settlement Class in the form of reimbursements for prior inspections, and free inspections moving forward. *McDermid*, 2023 WL 227355, at *8 ("Courts are instructed to compare the damages plaintiffs would likely recover if successful—discounted for the risk of not prevailing—with the amount of the settlement agreement."). Moreover, because the Settlement is not a traditional common fund, the recovery of the Settlement Class will not be reduced *pro rata* based on the number of claimants.

### C.  The *Prudential Factors*

The Third Circuit also permits courts to consider additional factors when evaluating whether to approve a class action settlement. In *In re Prudential*, the Third Circuit identified additional factors that the Court may consider the following factors in evaluating a settlement agreement:

> (1)     "the maturity of the underlying substantive issues, as measured by the experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages";
>
> (2)     the "existence and probable outcome of claims by other classes and subclasses";
>
> (3)     "the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants";
>
> (4)     "whether class or subclass members are accorded the right to opt out of the settlement";
>
> (5)     "whether any provisions for attorneys' fees are reasonable"; and

> (6)     "whether the procedure for processing individual claims under the settlement is fair and reasonable."

*In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 323 (3d Cir. 1998).

"Unlike the *Girsh* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential. They are permissive and non-exhaustive . . . ." *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 333 F.R.D. 364, 384 (E.D. Pa. 2019) (quoting *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013)).

The first *Prudential* factor is met here because the information disclosed by the parties, the independent investigation performed by Class Counsel, and research of key legal issues by counsel has enabled the parties to gain a strong grasp of the case and its probable outcome. *See Id.* ("Here, Class Counsel were able to make an informed decision about the probable outcome of a trial."). The parties were therefore able to make an informed decision prior to agreeing to the Settlement.

"Factors two and three look at the outcomes of claims by other classes and other claimants." *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2020 U.S. Dist. LEXIS 69614, *67 (E.D. Pa. April 20, 2020). Class Counsel is unaware of other related class actions. Moreover, as stated above, Class Counsel contends that the Settlement constitutes a highly desirable outcome for the members of the Settlement Class.

Since the Settlement permits individuals to opt out of the Settlement, and only 15 such requests have been submitted, the fourth *Prudential* factor is satisfied.

As demonstrated in the Plaintiffs' recently filed motion for attorney's fees (ECF No. 25), the attorney's fees sought in this action are reasonable. As a result, the fifth *Prudential* factor is met as well.

The procedure for processing claims under the Settlement is also fair and reasonable. Here, Settlement Class Members need only submit a simple Claim Form in order to avail themselves of

the benefits of the Settlement. Settlement Class Members are also provided with the contact information for Class Counsel if they have any questions regarding the relief or how to submit a claim.

### D.  The Court Should Reaffirm Certification of the Settlement Class

In the Preliminary Approval Order, the Court conditionally certified the proposed Class for settlement purposes, concluding that certification of the Settlement Class satisfied the requirements of Rules 23(a) and 23(b)(3). (ECF No. 23, pp. 1-3.) Nothing has changed since the Preliminary Approval Order, and no objections have been received challenging the propriety of the Court's certification of the Settlement Class. Accordingly, Class Counsel respectfully request that the Court reaffirm those findings, grant final approval of this Settlement and certify the Settlement Class proposed here.

### E.  The Notice Plan Satisfied Due Process and Rule 23(e)

Fed R. Civ. P. 23(c)(2)(B) states that "the court must direct to all members who can be identified through reasonable effort." Generac retained an experienced claims administrator, who oversaw the Notice Plan, and used this information to prepare the Notice that was sent to Settlement Class Members. In the first instance, email was used to send the notices. 53,462 email notices were sent. For any Settlement Class Members that Generac did not have email address for, notice was provided via first-class mail. 175,895 notices were mailed. The Notice of Settlement is also posted on the Settlement Website.[3]

In addition to the requirements of Rule 23, due process further requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

---

[3] *See* https://www.fuelplenumsettlement.com/case-documents.aspx (last visited September 13, 2023).

of the action and afford them an opportunity to present their objections.'" *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 435 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). The above-described notice system and accompanying notice forms ensured that interested parties were made aware of the action and presented them with an opportunity to present their objections. Accordingly, the form and manner of the notice satisfies all applicable requirements.

Further, in granting preliminary approval, the Court observed that the Notice Plan satisfied "the requirements of due process, Rule 23 of the Federal Rules of Civil Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and any other applicable laws, constitutes the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons." ECF No. 23, at p.5. As such, the Notice Plan was executed as intended, which also supports Plaintiffs' request for final approval of the Settlement.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court reaffirm certification of the Settlement Class and issue an order granting final approval to the Settlement.

DATED: September 13, 2023                 Respectfully submitted,

By:    */s/ Joseph G. Sauder*
        Joseph G. Sauder
        Joseph B. Kenney
        **Sauder Schelkopf LLC**
        1109 Lancaster Avenue
        Berwyn, PA 19312
        Phone: (888) 711-9975
        jgs@sstriallawyers.com
        jbk@sstriallawyers.com

        *Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing *PLAINTIFFS'*
*MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS*
*ACTION SETTLEMENT* was filed via the Court's CM/ECF system, thereby electronically serving
it on all counsel of record.


*/s/ Joseph G. Sauder*
Joseph G. Sauder
